UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                     :    17-cv-02558-ARR-RER
BENG KHOON LOO a/k/a David Loo                                       :
individually and on behalf of others similarly situated,             :    OPINION AND ORDER
                                                                     :
                        Plaintiff,                                   :    NOT FOR ELECTRONIC
                                                                     :    OR PRINT PUBLICATION
        -against-                                                    :
                                                                     X
I.M.E. RESTAURANT, INC. d/b/a Pho Vietnamese
Restaurant; PHO 92 RESTAURANT, INC. d/b/a Pho
Vietnamese Restaurant; TAI VIEM MA; CHAU XAO MA;
DAVID MA; RICHARD MA; ALEX SETO; ANDY SHE

                        Defendants.
-----------------------------------------------------------------------

ROSS, United States District Judge:

Plaintiff Beng Khoon Loo ("Mr. Loo"), along with two opt-in plaintiffs, brings this suit under the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL), alleging, among other things, minimum wage and overtime violations on the part of his former restaurant employer and various individuals associated with the restaurant's activities. Defendants moved for summary judgment on one narrow question: whether individual defendant Chau Xao Ma ("Ms. Ma") can be held liable as an "employer" under the statutes. Because the record before me establishes that Ms. Ma possessed neither the operational nor direct control over Mr. Loo and his colleagues that would be necessary to support the conclusion that she was their "employer," I grant defendants' motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.[1] The summary that follows contains only those facts that are relevant to the instant motion.

Mr. Loo was employed as a server at Pho Vietnamese Restaurant, located in Flushing, New York, from January 1, 2008 to April 10, 2016. Compl. ¶¶ 10, 75, ECF No. 1. Pho Vietnamese Restaurant is the common name of corporate defendants I.M.E. Restaurant and Pho 92 Restaurant, which plaintiffs allege to be either "the same employer" or "joint employers" under the NYLL.[2] Compl. ¶¶ 36–38. The restaurant closed in October 2017.[3] Several months later, on April 28, 2017, plaintiff filed suit against the corporate defendants and several individuals affiliated with its management. *See* Compl. ¶¶ 11–34. Following the parties' stipulation of conditional collective certification, Stip., ECF No. 27, Magistrate Judge Reyes conditionally certified a class of all non-exempt employees of the corporate defendants under § 216(b) of the FLSA, *see* Order, ECF No. 28. Two additional former employees of the restaurant, Xue Wei and Jian Ting Xie, subsequently consented to join in the action as opt-in plaintiffs. *See* Consent of Xue Wei, ECF No. 29; Consent of Jian Ting Xie, ECF No. 30.

---

[1] *See* Defs.' Rule 56.1 Stmt. of Material Facts, ECF No. 41-5 ("Defs.' 56.1"); Pls.' Resp. to Defs.' Stmt. of Undisputed Material Facts Pursuant to Local Rule 56.1, ECF No. 41-7 ("Pls.' 56.1 Resp."); Pls.' Additional Stmt. of Material Facts, ECF No. 41-7 ("Pls.' 56.1").

[2] Though defendants object to the classification of Ms. Ma as a "joint employer" of Mr. Loo and his colleagues, they have not objected to plaintiffs' characterization of the relationship between I.M.E. Restaurant, Pho 92 Restaurant, and Pho Vietnamese Restaurant.

[3] According to defendants, the restaurant closed "on or about September 2017." Aff. of Tai Viem Ma ¶ 3, ECF No. 41-4 ("Mr. Ma Aff."). However, plaintiffs maintain that the restaurant closed in "September or October of 2017," Pls.' Mem. of Law in Opp'n to Defs.' Mot. for Partial Summ. J. 4, ECF No. 41-6 ("Pls.' Mem. of Law"), and that Ms. Ma exercised authority as an employer when she "directed restaurant employees to go to work half [an] hour earlier [on one day] in October 2017, Pls.' 56.1 Resp. ¶ 10. "[R]esolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," I assume for the purposes of this summary judgment motion that the restaurant closed in October 2017. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)).

From 2009 until the restaurant closed, Ms. Ma was employed as its cashier. Defs.' 56.1 ¶ 1, 3. At all relevant times, Ms. Ma was the live-in "girlfriend . . . or domestic partner" of Tai Viem Ma ("Mr. Ma"), the owner of the restaurant. Pls.' 56.1 ¶ 1. She and Mr. Ma have three adult children together, including individual defendants Michael Ma and Irene Ma. *See* Pls.' Resp. to Defs.' Contemplated Mot. for Summ. J. 1, ECF No. 34. Mr. Ma initially hired Ms. Ma for the position of cashier after the restaurant's previous cashier quit. *See* Translated Decl. of Chau Xao Ma ¶ 3, ECF No. 41-3 ("Ms. Ma Decl."). Because the restaurant struggled to attract customers, Mr. Ma "could not afford to pay a good salary" for the position. Mr. Ma Aff. ¶ 10; Ms. Ma Decl. ¶ 6. During the time that Ms. Ma served as cashier, "[b]usiness was often slow," leaving Ms. Ma with "a lot of free time." Ms. Ma Decl. ¶ 6. Employees of the restaurant, including opt-in plaintiff Jian Ting Xie ("Mr. Xie"), referred to Ms. Ma as "lady boss"—a term plaintiffs suggest demonstrates the authority Ms. Ma exercised over the restaurant and its employees. *See* Pls.' Resp. 56.1 ¶ 4; Decl. of Jian Ting Xie ¶ 3, ECF No. 41-8 ("Xie Decl.").

The restaurant was open six days a week, and Ms. Ma was present every day that it was open. Pls.' 56.1 ¶ 2.[4] Mr. Ma, the "sole owner of the restaurant," Pls.' Resp. 56.1 ¶ 1, simultaneously managed several other restaurants in close proximity to Pho Vietnamese Restaurant, Mr. Ma Aff. ¶ 5. While both parties acknowledge that Mr. Ma's management responsibilities at the other restaurants required him to spend some of his time away from Pho Vietnamese Restaurant during its hours of operation, they are in disagreement as to which employees assumed management responsibilities when Mr. Ma was absent. According to Ms. Ma, "Mr. Loo pretty much ran the [r]estaurant when Mr. Ma was not around. He took care of customers, communicated with the kitchen staffs, and made sure everything ran smoothly." Ms.

---

[4] Though defendants do not dispute the days during which Ms. Ma was present at the restaurant, they classify her as a "part-time cashier." Ms. Ma Decl. ¶ 4.

Ma Decl. ¶ 13. In contrast, plaintiffs maintain that Ms. Ma was the staff member who assumed a significant supervisory role over the restaurant and its employees, including making "employment[] and management decisions," when Mr. Ma was otherwise occupied. Pls.' 56.1 Resp. ¶ 5. Plaintiffs argue that Ms. Ma, a "close relative [and a] person who has three children" with Mr. Ma, must have had authority to manage the restaurant when Mr. Ma was gone, as "it is very difficult to believe and hard to imagine that one person can simultaneously manage four different restaurants at the same time." Pls.' Mem. of Law in Opp'n to Defs.' Mot. for Partial Summ. J. 4, ECF No. 41-6 ("Pls.' Mem. of Law").

As to the specific additional responsibilities that Ms. Ma may have exercised while employed as a cashier, both parties agree that Ms. Ma was not involved in the hiring or firing of employees, Defs.' 56.1 ¶¶ 6–7; Pls.' 56.1 Resp. ¶¶ 6–7, and was never "consulted by Mr. Ma . . . on any of the business and management decisions involving the [r]estaurant," Defs.' 56.1 ¶ 8; Pls' 56.1 Resp. ¶ 8. However, they disagree about the extent to which Ms. Ma's position involved the oversight and management of other employees. Though defendants maintain that Ms. Ma "was not given any other job responsibility" beyond accepting and processing customer payments, Defs.' 56.1 ¶ 3, plaintiffs allege that Ms. Ma "gave instructions to employees of Pho Vietnamese Restaurant . . . on how to do restaurant related works," including directing employees to clean areas of the restaurant when she discovered that they were dirty. Xie Decl. ¶¶ 5–6. Ms. Ma states that she helped Mr. Loo clean tables when the restaurant was busy, Ms. Ma Decl. ¶ 9, but denies that she ever directed employees to complete specific tasks, *id.* ¶¶ 11–14. Plaintiffs also allege that Ms. Ma "had [the] power to set employees' schedules" for the restaurant, which she exercised by authorizing employees to take sick days and directing them to

4

arrive to work early on a specific date in October 2017 shortly before the restaurant shut down. Xie Decl. ¶¶ 7–9.

Soon after the close of discovery, counsel for the corporate defendants and for several of the individual defendants submitted a pre-motion letter to this court indicating their plan to file a motion for summary judgment to dismiss the complaint against Chau Xao Ma, Irene Ma, and Michael Ma. Defs.' Pre-Motion Letter, ECF No. 33. Plaintiffs voluntarily dismissed Irene Ma and Michael Ma as defendants in the action on June 11, 2018,[5] Stip. of Dismissal, ECF No. 35, but maintained that Chau Xao Ma exercised sufficient authority over plaintiffs to be held liable as an "employer" under the FLSA and the NYLL, *see* Pls.' Resp. to Defs.' Contemplated Mot. for Summ. J. 2 (stating that plaintiffs would voluntarily dismiss defendants only if "our clients do not recognize them . . . as people with authority over them at the restaurant"). On July 9, 2018, defendants moved for partial summary judgment on the question of Ms. Ma's status and role within the restaurant. For the reasons discussed below, defendants' motion for partial summary judgment is granted.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Even where the parties dispute certain facts, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*

---

[5] In their letter responding to defendants' pre-motion letter regarding the anticipated motion for summary judgment, plaintiffs' counsel told the court that they would show photographs of Michael Ma, Irene Ma, and Chau Xao Ma to Mr. Loo and the opt-in plaintiffs, and "voluntarily dismiss without prejudice any of [the three individual defendants] if our clients do not recognize them from their photographs as people with authority over them at the restaurant."*See* Pls.' Resp. to Defs.' Contemplated Mot. for Summ. J. 2. Plaintiff subsequently voluntarily dismissed Michael Ma and Irene Ma. Stip. of Dismissal, ECF No. 35.

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, it is not the judge's role to "weigh the evidence and determine the truth of the matter[,] but [rather] to determine whether there is a genuine issue for trial." *Id.* at 249. "[A]ll ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir. 1994).

The moving party bears the burden of establishing the absence of any genuine issue of material fact. *See Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact."). If the moving party satisfies this initial burden, the party opposing the motion "must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015). The evidence proffered by the non-movant "is to be believed," *Anderson*, 477 U.S. at 255, and summary judgment should be denied if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party," *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

Though the court must review the non-movant's evidence in a "generous light," *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), the non-movant "may not rest upon mere conclusory allegations or denials." *Securities and Exchange Commission v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat summary

judgment, *Anderson*, 477 U.S. at 252, and the opponent of the motion "must offer some hard evidence showing that [their] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). If "no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

## DISCUSSION

### I. Legal Standard

Defendants argue that Ms. Ma is not an "employer" under the FLSA or the NYLL because she "neither possessed and exercised authority over [the] management, supervision, and oversight of [r]estaurant [d]efendants' affairs in general, nor possessed and exercised direct control over [p]laintiffs' employment." Mem. of Law in Support of Defs.' Mot. for Partial Summ. J. under Rule 56.1, ECF No. 41-1 ("Defs.' Mem. of Law"). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The statute further defines the term "employ" as "to suffer or permit to work." § 203(g). Courts are instructed to construe these definitions broadly, as "the remedial nature of the statute . . . warrants an expansive interpretation of its provisions." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). In the Second Circuit, courts generally interpret "[t]he statutory standard for employer status under NYLL [to be] nearly identical to that of the FLSA."[6] *Olvera v. Bareburger Group LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014); *see*

---

[6] In 2013, the Second Circuit declined to decide whether the standard for "employer" is identical under the FLSA and NYLL, finding the determination unnecessary for the specific factual circumstances presented in that case. *Irizarry v. Catsimatidis*, 722 F.3d 99, 117–18 (2d Cir. 2013).

*also Marcelino v. 374 Food, Inc.*, No. 16 Civ. 6287 (KPF), 2018 WL 1517205, at *12 (S.D.N.Y. Mar. 27, 2018) ("The FLSA and NYLL statutes are often construed together, particularly when the New York Court of Appeals has not spoken to an issue under the NYLL."). Here, the parties do not argue otherwise, so I assume that the standards are the same. *See Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *22 (S.D.N.Y. June 9, 2016).

A single employee can have multiple employers under the FLSA, and an employer can be held liable even if he was not "personally complicit in FLSA violations." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013); *see also* 29 C.F.R. § 791.2. In contrast with many joint employer cases that involve multiple corporate employers, *see, e.g. Liu v. Donna Karan Int'l, Inc.*, No. 00 Civ. 4221(WK), 2001 WL 8595, at *1 (S.D.N.Y. Jan. 2, 2001), defendants' motion for summary judgment presents the specific question of "whether an *individual* within a company that undisputedly employ[ed] a worker is personally liable for damages as that worker's 'employer.'" *Irizarry*, 722 F.3d at 105 (emphasis added). There is "no rigid rule" for deciding this question, but rather a "nonexclusive and overlapping set of factors." *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008). "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman*, 172 F.3d at 139 (citations omitted).

The Second Circuit in *Irizarry v. Catsimatidis* recently identified two considerations that can help guide courts in the "case-by-case" determination of a particular defendant's "employer" status under the FLSA. 722 F.3d at 104 (quoting *Barfield*, 537 F.3d at 141–42). First, courts must consider evidence of the individual defendant's "authority over management, supervision, and oversight of [the corporate defendant's] affairs in general." *Irizarry*, 722 F.3d at 111. This

evidence is "relevant to 'the totality of the circumstances in determining the [individual's] operational control of [the company's] employment of [the plaintiff employees].'" *Id.* at 110 (quoting *Herman*, 172 F.3d at 140 (alterations in original)). The operational control inquiry asks about the relationship between the individual defendant's decision-making authority and the company's activities, as opposed to focusing exclusively on the individual's relationship with the employees themselves. Still, courts must consider the defendant's operational control of the company's *employment* of the relevant plaintiffs, "rather than simply operational control of the company" as a whole. *Id.* at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110.

The second inquiry focuses on the individual's relationship to the management of employees in a more direct, rather than tangential, sense. Under this inquiry, courts are to consider evidence of the individual's "direct control" over the plaintiff employees, *id.* at 111, including an analysis of the factors identified in *Carter v. Dutchess Community College*: "[W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." 735 F.2d 8, 12 (2d Cir. 1984). Despite the relevance of these four factors to the "employer" analysis, "the determination of the [employer-employee] relationship does not depend on . . . isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). No individual circumstance is dispositive to the question of whether an individual is an employer, and courts have concluded that an individual defendant qualifies as an "employer" even when several of the *Carter* factors do not apply in a specific case. *See, e.g.*, *Jin Dong Wang*

9

*v. LW Restaurant, Inc.*, 81 F. Supp. 3d 241, 256 (E.D.N.Y. 2015). Though "a positive finding on [the] four [*Carter*] factors" may be "sufficient to establish employer status," it is not necessary that the defendant meet any of the *Carter* prongs in order to trigger liability as an "employer." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003).

*Irizarry* itself provides a helpful illustration of the distinction between "operational" and "direct" control. In that case, the court concluded that John Catsimatidis, the president and CEO of Gristede's Foods, was an employer under the FLSA—even though the "facts . . . make for a close case." *Irizarry*, 722 F.3d at 116. Despite only satisfying two of the *Carter* factors— specifically, the ability to hire certain employees and the exercise of control over the "rate and method of [employees'] payment," as evidenced by the authority to sign paychecks, *id.* at 115— Catsimatidis qualified as an "employer" because his role and decision-making authority "affected not only Gristede's bottom line but individual stores, and the personnel and products therein." *Id.* at 116. As support for his operational control over the company, the court pointed to Castimatidis' regular presence in individual stores, his involvement in responding to customer complaints, and his comments to store managers regarding store displays. *Id.* at 113–14.

As the court's analysis in *Irizarry* demonstrates, the determination of employment status is "fact-intensive," *Barfield*, 537 F.3d at 143, making it "rarely suitable for summary judgment." *Jin Dong Wang*, 81 F. Supp. 3d at 254. *But see Barfield*, 537 F.3d at 135–36 (affirming the district court's grant of summary judgment on the question of defendant's "employer status"); *but cf. Bravo v. Eastpoint Int'l, Inc.*, No. 99 Civ. 9474(WK), 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001) (dismissing FLSA claim against individual defendant Donna Karan on the grounds that plaintiffs "allege no fact which would tend to establish her power to control the plaintiff workers").

## II. Ms. Ma is Not Plaintiffs' Employer Under Either the FLSA or the NYLL

Plaintiffs argue that "a reasonable fact finder could conclude that Chau Xao Ma [was] an employer" under the FLSA and the NYLL. Pls.' Mem. of Law 1. To support their position, they point to a small number of allegations regarding Ms. Ma's role and relationship to plaintiffs: (1) she "is the girlfriend or domestic partner of Tai Viem Ma;" (2) she was present at the restaurant every day that it was open; (3) employees of the restaurant referred to her as "lady boss;" (4) "she had power to direct the restaurant's employees to clean up places that were dirty;" and (5) she had authority over employees' work schedules, evidenced by the fact that she could "tell[] employees to go to work half an hour earlier, or allow[] employees to take days off." *Id.* 1–2. Even after drawing all inferences in favor of plaintiffs and remaining mindful that summary judgment is rarely appropriate on the issue of employer status under the FLSA, I nonetheless conclude that plaintiff has failed to show that there are genuine disputes as to any material facts that would affect Ms. Ma's liability as an individual employer.

### a. Operational Control

Plaintiffs' primary argument regarding Ms. Ma's operational control over the restaurant and its employees appears to hinge on the fact that Mr. Ma held other jobs, and was therefore not always present when the restaurant was open. Rather than pointing to specific evidence of Ms. Ma's authority over the restaurant in Mr. Ma's absence, plaintiffs argue that it is "absurd" to believe that Mr. Ma was the sole manager of all four restaurants, and that Ms. Ma would have been the natural person to assume his responsibilities given their close relationship. *Id.* at 4. However, this is nothing more than "mere speculation" regarding the roles and relationships of

the parties, which "cannot take the place of actual evidence." *Marcelino*, 2018 WL 1517205, at *15.

Furthermore, to the extent that plaintiffs argue that Ms. Ma's authority to direct plaintiffs to clean up areas of the restaurant is evidence of operational control, this argument is unavailing. "An occasional exercise of delegated authority is insufficient to establish an individual's employer status." *Allende v. PS Brother Gourmet, Inc.*, No. 11 Civ. 5427 (AJN) (KNF), 2013 WL 11327098, at *4 (S.D.N.Y. Feb. 1, 2013). Plaintiffs do not state how frequently Ms. Ma exercised this authority—or, indeed, provide any specific instances as an example—but even if Ms. Ma's role involved the assignment of cleaning responsibilities on a regular basis, "an individual does not become an employer merely by directing employees to carry out tasks related to customer service." *Salinas v. Starjem Restaurant Corp.*, 123 F. Supp. 3d 442, 464 (S.D.N.Y. 2015). Even when an individual defendant gives employees orders or directions, she does not become an "employer" unless she also holds "an integral role in [the company's] operations, or in setting work policies, schedules or conditions of employment." *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 291 (E.D.N.Y. 2002). Further, "[p]laintiffs cite no authority for the proposition that assignment of daily tasks, when unrelated to hours worked or wages received, is relevant to the 'employer' analysis." *Allende*, 2013 WL 11327098, at *3. Plaintiffs have provided no evidence that Ms. Ma's instructions to the employees are evidence of her actual control over the restaurant or its employees, rather than evidence that she occasionally "communicat[ed]" information that had been relayed to her by Mr. Ma. *Cf. Mendez v. Pizza on Stone, LLC*, No. 11 Civ. 6316(DLC), 2012 WL 3133522, at *2 (S.D.N.Y. Aug. 1, 2012) (finding that plaintiffs' evidence on individual liability demonstrated, "[a]t most," that the defendant occasionally "communicated management policies on wages and hours to employees").

Likewise, the mere fact that Ms. Ma was present at the restaurant every day that it was open does not demonstrate that she was plaintiffs' employer under the statutes. *See Salinas*, 123 F. Supp. 3d at 464 ("[Defendant's] daily presence at the Restaurant reveals nothing about her level of authority."). And, the fact that plaintiffs may have subjectively thought of her as their boss, as evidenced by their use of the nickname "lady boss," does not demonstrate that she was *in fact* their boss. *Id.*; *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 374 (S.D.N.Y. 2014) (plaintiffs' "subjective beliefs" about an individual's employer status are not sufficient to give rise to liability); *cf. Jin Dong Wang*, 81 F. Supp. 3d at 247, 254–55 (holding that a restaurant cashier, also called "lady boss" by the restaurant's employees, was an "employer" under the statute because there was a genuine dispute as to whether she held actual authority, including the ability to fire employees, create work schedules, and direct the kitchen staff on food quality).

### b. *Carter* Factors

Plaintiffs have likewise failed to allege evidence of Ms. Ma's direct control that would give rise to a genuine dispute regarding her status as an "employer." Though an individual does not have to be engaged in "continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control" in order to be deemed an employer, *Herman*, 172 F.3d at 139, the direct control inquiry focuses on four primary factors that are often present in an employment relationship: (1) authority over the hiring and firing of employees; (2) supervision and control of work schedules and the conditions of employment; (3) determination of rates and methods of payment; and (4) maintenance of employment records. *Carter*, 735 F.2d at 12.

Here, the parties agree that Ms. Ma did not have the authority to hire or fire employees and did not maintain the restaurant's employment records.[7] Pls.' Mem. of Law 4–5. Plaintiffs make no allegations regarding Ms. Ma's determination of the rate and method of payment, but they do not dispute defendants' contention that Mr. Ma, and not Ms. Ma, was the person who determined "compensation rates." Defs.' Mem. of Law 7.

The only dispute in the record involves the extent to which Ms. Ma meets the second *Carter* factor—the supervision or control of employment schedules and conditions of employment. Plaintiffs argue that Ms. Ma satisfies this factor because employees "would ask [her] for permission to take days off" when they were sick, and because she "directed Pho Vietnamese employees to go to work a half hour earlier" on one date shortly before the restaurant closed. Pls.' Mem. of Law 4. In response, defendants argue that, even if these allegations are true, they are simply "one-off instances," and they are insufficient to show a genuine issue of material fact. Defs.' Mem. of Law in Reply to Pls.' Opp'n to Defs.' Mot. for Partial Summ. J. under Rule 56 2, ECF No. 41-9 ("Defs.' Reply").

I agree with defendants. First, it is unclear from plaintiffs' evidence whether they are alleging that Ms. Ma always gave employees permission to take sick days, or whether she did so on just one specific occasion. *See* Xie Decl. ¶ 8 ("[W]hen I was sick, I called lady boss to request a day off."). However, even resolving this ambiguity in favor of the plaintiffs, this evidence is simply not sufficient to meet the second factor in the *Carter* analysis—let alone to support a finding of individual liability. This factor focuses on an employer's authority over the *extended*

---

[7] Plaintiffs acknowledge that Ms. Ma did not keep employment records, "but only because it was [d]efendants' policy to not keep any employment records." Pls.' Mem. of Law 4. While it is true that an individual defendant can still be liable as an employer if the company does not keep employment records, and the absence of such records "does not undermine" a finding that the individual is an "employer," *Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 36 (E.D.N.Y. 2015), there is no basis for plaintiffs' contention that the absence of employment records actually "cuts *against* [d]efendants' contention that Chau is not an employer," rather than simply failing to prove it. Pls.' Mem. of Law 4.

terms of an employee's work schedule, rather than the more limited authority to make ad hoc adjustments. *See, e.g.*, *Ethelberth*, 91 F. Supp. 3d at 353 (finding that "[t]he evidence . . . establishes the second factor in the *Carter* framework" where the defendant testified that it was his policy not to allow employees to work more than 40 hours per week). Though plaintiffs' allegations may be relevant to this analysis, they are not sufficient to prove that this factor is met. *Cf. Jin Dong Wang*, 81. F. Supp. 3d at 248 (finding that the restaurant's cashier met the second prong of *Carter* because she "require[d] a waiter to set a new work schedule" every six months, and also gave permission to employees to take days off on "approximately three occasions"). Furthermore, even if this evidence was sufficient to satisfy the second factor of *Carter*, no single factor is dispositive, and plaintiffs' additional evidence fails to demonstrate by a "totality of the circumstances" that a rational factfinder could find that Ms. Ma is an "employer" under the FLSA and the NYLL. *Irizarry*, 722 F.3d at 110.

## CONCLUSION

Because plaintiffs have done little more than make "bare allegations of [Ms. Ma's] control over employee-plaintiffs that are based [substantially] upon [her] job title and presumed duties," *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009), I grant defendants' motion for summary judgment on the issue of Ms. Ma's liability under the FLSA and NYLL.

So ordered.

Date: August 29, 2018 _____/s/_____
      Brooklyn       Allyne R. Ross
                                          United States District Judge