UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
BENG KHOON LOO a/k/a David Loo, et al.,  :
: 17-cv-02558-ARR-RER
Plaintiffs,  :
: OPINION AND ORDER
-against-  :
: NOT FOR ELECTRONIC
I.M.E. RESTAURANT, INC., et al.  : OR PRINT PUBLICATION
Defendants.  :
------------------------------------------------------------------- :
X

ROSS, United States District Judge:

Three of the defendants in this wage-and-hour lawsuit have moved for summary judgment on plaintiffs' Fair Labor Standards Act (FLSA) claims. In their motion, defendants argue that plaintiffs are not "covered employees" under the terms of the FLSA because plaintiffs' employer, Pho Vietnamese Restaurant, did not earn at least $500,000 in annual gross sales during its years of operation. Because plaintiffs have failed to demonstrate that there is *any* dispute of material fact regarding the restaurant's earnings, I grant summary judgment to defendants. Accordingly, plaintiffs' FLSA claims are dismissed, and I decline to exercise supplemental jurisdiction over their state-law claims.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs, Beng Khoon Loo and two opt-in plaintiffs, commenced this action on April 28, 2017. *See* Compl., ECF No. 1; Order, Aug. 21, 2017, ECF No. 28; Xue Wei Consent, ECF No. 29; Jian Ting Xie Consent, ECF No. 30. They assert claims for minimum wage and overtime violations under the FLSA and the New York Labor Law (NYLL) against two corporate defendants—I.M.E.

1

Restaurant, Inc. and Pho 92 Restaurant, Inc.—and several individuals. Compl. ¶¶ 11–34; 98–154.[1]
Plaintiffs allege that the two corporate defendants are either "the same employer" or "joint employers" under the NYLL, and that both defendants did business as Pho Vietnamese Restaurant, located in Flushing, New York. Compl. ¶¶ 36–38. Mr. Loo was employed by the restaurant as a waiter until April 2016, *see* Damages Calculations 1, ECF No. 46-1, while the two opt-in plaintiffs served as kitchen workers until the restaurant closed in October 2017, *see id.* at 2–3.[2] After Magistrate Judge Ramon E. Reyes, Jr. certified that discovery was complete on April 18, 2018, *see* Order, Apr. 18, 2018, the parties filed a joint pretrial order on July 20, 2018. *See* Proposed Pretrial Order, ECF No. 39.

I granted partial summary judgment to defendants on August 29, 2018, which resulted in the dismissal of one of the defendants from the lawsuit. *See* Order, Aug. 29, 2018, ECF No. 43. After settlement discussions proved unsuccessful during a final conference before Judge Reyes on November 27, 2018, I held an initial pre-trial conference with the parties on November 30, 2018. *See* Minute Entry, Nov. 30, 2018, ECF No. 48. During that conference, I instructed counsel for both parties to submit briefs on several topics by December 7, 2018, so that the court and the

---

[1] Additionally, plaintiffs' complaint asserted a cause of action under the Internal Revenue Code, 26 U.S.C. § 7434, for the alleged fraudulent filing of IRS returns, and a parallel claim under the New York General Business Law, N.Y. Gen. Bus. Law § 349. Compl. ¶¶ 155–61. However, during a pretrial conference held on November 30, 2018, plaintiffs informed the court that they no longer wished to assert these claims at trial. *See* Minute Entry, Nov. 30, 2018, ECF No. 48. Therefore, these claims are dismissed.

[2] As I noted in my earlier opinion in this action, the record is unclear as to the last month of the restaurant's operation. *See Loo v. I.M.E. Rest., Inc.*, No. 17-cv-02558-ARR-RER, 2018 WL 4119234, at *1 n.3 (E.D.N.Y. Aug. 29, 2018). Though defendants maintain that the restaurant "closed down on or about September 2017," *see* Ma Aff. ¶ 3, ECF No. 50-2; Defs.' 56.1 Statement ¶ 1, ECF No. 50-3, two of the plaintiffs allege that they continued to work for the restaurant until October 2017, *see* Damages Calculations 2–3. As in my last opinion, I assume for the purposes of this motion that the restaurant closed in October 2017. *See Loo*, 2018 WL 4119234, at *1 n.3.

parties could begin to prepare for the upcoming jury trial. *Id.* In particular, plaintiffs were ordered to provide the court with their evidentiary basis for establishing at trial that defendants earned at least $500,000 in annual gross sales, which is a necessary prerequisite for establishing "enterprise coverage" under the FLSA. *Id.* at 2; *see, e.g.*, *Li v. Zhao*, 35 F. Supp. 3d 300, 305 (E.D.N.Y. 2014). When neither party submitted any of the required briefing materials by December 7, 2018, I ordered that all submissions must be served and filed by December 17, 2018, with a responsive briefing deadline of December 20, 2018; I warned the parties that "[a]ny further failure to comply with the court's orders will result in sanctions." *See* Order, Dec. 11, 2018. Though plaintiffs did not submit any materials in compliance with this order, defendants filed a motion for summary judgment on December 17, 2018, seeking a determination by the court that plaintiffs are not "covered employees" under the statute because defendants' annual gross sales never met the $500,000 threshold.[3] Mot. for Summ. J., ECF No. 50-1. Despite my warning that plaintiffs' failure to oppose defendants' motion by December 20, 2018 would result in the court reviewing defendants' motion as an unopposed motion for summary judgment, *see* Order to Show Cause, Dec. 18, 2018, plaintiffs did not submit an opposing memorandum or any materials in response to defendants' motion. Moreover, plaintiffs did not respond to the court's December 18 order demanding that the parties show cause in writing as to why sanctions should not be issued for failure to comply with the court's orders, *see id.*

---

[3] Though the ECF notification for defendants' motion was received in chambers after midnight on December 18, the motion was filed by defendants before the end of the day on December 17, *see* Mot. for Summ. J., ECF No. 50-1. Defendants did not submit any of the other materials I requested that they provide the court, nor did they notify the court of their intent to forego those arguments at trial. However, in a December 19 letter to the court, defendants persuasively explained that their failure to provide materials in accordance with my order was inadvertent and unintentional, and I therefore excuse this oversight. *See* Letter, ECF No. 51.

Defendants' motion argues that no reasonable jury could find that plaintiffs are "covered employees" under the FLSA, as the restaurant does not meet the $500,000 gross sales threshold necessary to establish "enterprise coverage." *See* Mot. for Summ. J. 5. As support, defendants provide the restaurant's corporate tax returns for the years 2009 through 2015.[4] *See* Mot. for Summ. J., Exs. A–G, ECF Nos. 50-4 to 50-10 (collectively, "Tax Returns"); *see also Liu v. Da Di Chinese Food, Inc.*, No. 16-CV-937 (MKB) (ST), 2018 WL 1037480, at *4 (E.D.N.Y. Feb. 6, 2018) ("[R]egulations promulgated by the Labor Department permit the use of tax records to compute the annual gross sales of a business" (citing 29 C.F.R. § 779.266)), *adopted by* 2018 WL 1033246 (E.D.N.Y. Feb. 21, 2018). Defendants have not submitted the restaurant's tax returns for 2016 or 2017, despite the fact that plaintiffs allege that defendants failed to pay them minimum wage and overtime during those years, *see* Damages Calculations.

Defendants' tax returns were prepared by Kenneth K. Ho, a professional CPA, and they are all accompanied by an unsigned letter from Mr. Ko explaining their contents. *See* Tax Returns. Defendants' tax returns reveal that the restaurant's annual gross sales routinely fell far below the

---

[4] The tax returns submitted by defendants as exhibits to their motion for summary judgment are all in the name of Pho 92 Restaurant, Inc., one of the corporate defendants to this action. The address listed on the tax returns is 3802 Prince Street, Flushing, New York, *see, e.g.* Mot. for Summ. J. Ex. A, at 9, ECF No. 50-4, which—despite a small stylistic difference—appears to be the same as the address plaintiffs provide for the restaurant in their complaint. *See* Compl. ¶ 10 (listing the address as 38-02 Prince Street, Flushing, New York). Though defendants have not submitted tax returns for the second corporate defendant, I.M.E. Restaurant, Inc., plaintiffs assert that these two corporate entities were both located at the same address and collectively did business as the same restaurant, *see id.* ¶¶ 36–38. Defendants do not dispute this characterization of the relationship between the corporate entities, and plaintiffs have presented no evidence from which I can conclude that I.M.E. Restaurant, Inc. filed its own tax returns or had yearly gross receipts or sales that exceeded $500,000. Furthermore, because plaintiffs were employed at the restaurant, the relevant question for enterprise coverage is whether plaintiff's *employer* meets the statutory threshold of $500,000 in gross receipts. Mr. Ma's affidavit resolves any ambiguity created by the tax returns by repeating the gross sales figures listed in defendants' tax returns as the "gross sales of the Restaurant." Ma Aff. ¶ 12.

$500,000 threshold established by the FLSA. Specifically, the tax returns indicate the following yearly "gross receipts or sales":

> 2009: $114,211. *See* Mot. for Summ. J. Ex. A, at 9, ECF No. 50-4.
> 2010: $165,854. *See* Mot. for Summ. J. Ex. B, at 9, ECF No. 50-5 ("2010 Return").
> 2011: $190,810. *See* Mot. for Summ. J. Ex. C, at 5, ECF No. 50-6.
> 2012: $207,502. *See* Mot. for Summ. J. Ex. D, at 5, ECF No. 50-7 ("2012 Return").
> 2013: $229,069. *See* Mot. for Summ. J. Ex. E, at 5, ECF No. 50-8 ("2013 Return").
> 2014: $240,026. *See* Mot. for Summ. J. Ex. F, at 9, ECF No. 50-9 ("2014 Return").
> 2015: $231,133. *See* Mot. for Summ. J. Ex. G, at 9, ECF No. 50-10.

Though defendants' tax returns appear to have been electronically filed, they are all missing the restaurant officer's signature. *See* Tax Returns; *see, e.g.*, 2010 Return at 9 (including officer's name and title, but missing signature); 2012 Return at 5 (same). Likewise, while the returns include the name, address, and phone number for the tax preparer, they are missing the tax preparer's signature. *See* Tax Returns; *see, e.g.*, 2013 Return at 5; 2014 Return at 9.

In addition to the tax returns, defendants submitted an affidavit from Tai Viem Ma, the owner of the restaurant. *See* Ma Aff., ECF No. 50-2. Mr. Ma explains that the restaurant "was only about a few hundred square feet, and it had only a few dining tables." *Id.* ¶ 5. The average cost of an item on the restaurant's menu was $12. *Id.* When it was open, the restaurant struggled to attract customers, and "business . . . was so poor that [the restaurant's] sales often could not cover its expenses." *Id.* ¶ 6. Though Mr. Ma's affidavit does not swear to the accuracy of the tax returns themselves, he reiterates the gross receipts contained in the tax returns and affirms that these figures represent "[t]he gross sales of the Restaurant for the year[s] of 2009 to 2015." *Id.* ¶ 12. He also affirms that he "personally handled the finances and the accounting of the Restaurant and knew the gross sales figures of every year." *Id.* ¶ 9.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When reviewing a motion for summary judgment, the court must view the evidence in the "light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and its entitlement to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where, as here, the nonmovant bears the burden of proof at trial, the [defendants] may show prima facie entitlement to summary judgment . . . . [by] point[ing] to evidence that negates [the plaintiff's] claim[]."*Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006)). If the non-movant then fails to present any proof that challenges the movant's evidence, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56).

## DISCUSSION

### A. Federal Claims

In order to prove a defendant's liability for minimum wage and overtime violations under the FLSA, a plaintiff must first demonstrate that he is a "covered employee." *See Benitez v. F & V Car Wash, Inc.*, No. 11-CV-01857 (DLI)(SMG), 2012 WL 1414879, at *1 (E.D.N.Y. Apr. 24, 2012). The statute allows a plaintiff to demonstrate coverage in one of two ways: (1) by proving that the plaintiff himself "is engaged in commerce or in the production of goods for commerce,"

or (2) by proving that the plaintiff's employer is "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a); *accord* 29 U.S.C. § 207(a)(1). The first possible basis for employee coverage is known as "individual coverage," while the second basis is known as "enterprise coverage." *See Li*, 35 F. Supp. 3d at 305. The statute further provides that an employer will satisfy the test for "enterprise coverage" if it: "(i) has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce;" and (ii) has an "annual gross volume of sales made or business done [that] is not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

Though employee coverage is an essential element of an FLSA claim, federal courts have consistently held that a plaintiff's failure to demonstrate coverage under the statute does not deprive the court of subject matter jurisdiction, even if jurisdiction is premised on the FLSA claim under 28 U.S.C. § 1331. *See, e.g.*, *Zaldivar v. Anna Bella's Café, LLC*, No. 11-CV-1198 (JS)(ETB), 2012 WL 642828, at *3 (E.D.N.Y. Feb. 28, 2012) (citing cases). Instead, the question of coverage "goes to the merits of Plaintiffs' claims." *Monterossa v. Martinez Rest. Corp.*, No. 11 Civ. 3689(JMF), 2012 WL 3890212, at *3 (S.D.N.Y. Sept. 7, 2012) (quoting *Velez v. Vassallo*, 203 F. Supp. 2d 312, 332 (S.D.N.Y. 2002)); *cf. Benitez*, 2012 WL 1414879, at *1 ("[T]he question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, but an element that a plaintiff must establish in order to prove liability."). However, where, as here, defendants move for summary judgment on the basis of a plaintiff's coverage under the statute, plaintiffs can survive summary judgment only by demonstrating that there is a genuine dispute of material fact regarding the plaintiff's coverage. *Cf. Monterossa*, 2012 WL 3890212, at *3 ("[I]n order to survive summary judgment, Plaintiffs need not *prove* that the Restaurant had gross income

of more than $500,000; that would be their burden at trial. Plaintiffs need only show that there is a material dispute of fact regarding the issue." (emphasis added)).

In this case, plaintiffs have not pled any of the elements that would give rise to individual coverage. *See* Compl. ¶ 10. Instead, they hinge their claim for employee coverage on their allegation that the restaurant meets the statutory requirements necessary to support "enterprise coverage." *See id.* ¶¶ 12, 15. In their complaint, plaintiffs allege that I.M.E. Restaurant, Inc. and Pho 92 Restaurant, Inc.—both of which did business as Pho Vietnamese Restaurant during the restaurant's years of operation—are "engaged in interstate commerce" and have "gross sales in excess of five hundred thousand dollars ($500,000.00) per year." *Id.*[5] The first prong of enterprise coverage is easily met; because it applies whenever a company's employees handle "materials" that moved in interstate commerce, "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (citation omitted). Though plaintiffs have not presented specific evidence to demonstrate that they could prove this element at trial, defendants do not argue that plaintiffs would not meet this prong of the enterprise coverage test. Thus, I assume for the purposes of this motion that the restaurant is "engaged in interstate commerce." However, I conclude that plaintiffs have not raised a genuine dispute of material fact regarding the second prong of enterprise coverage—the restaurant's gross sales—and I therefore grant summary judgment to defendants. *See, e.g.*, *Li*, 35 F. Supp. 3d at 307 (granting summary judgment to defendants where "'the record as a whole' . . . merely 'points' to the conclusion that a jury would rule in Defendants' favor, and not [plaintiff's] based on the fact that the restaurant did not meet the $500,000 threshold

---

[5] Though the restaurant is no longer in operation, plaintiff's complaint was filed in April 2017, before the restaurant closed, so it uses the present tense to describe the restaurant's status.

in terms of gross sales; and [plaintiff] has done nothing to alter that balance to prove a 'genuine' dispute for trial." (quoting *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998))).

Though a restaurant's tax returns do not provide *conclusive* evidence of the entity's gross sales or receipts, a court may rely upon tax returns in determining whether there is a genuine dispute of material fact regarding enterprise coverage. *See, e.g.*, *Yupa v. Country Stone & Fence Corp.*, No. 14-7384, 2017 WL 27957, at *4 (E.D.N.Y. Jan. 3, 2017) (citing cases). Here, defendants' tax returns demonstrate that the restaurant's gross sales from 2009 through 2015 fell far below $500,000. Though plaintiffs were warned several times of the consequences of their silence, *see* Order, Dec. 11, 2011; Order to Show Cause, Dec. 18, 2018, they failed to respond to defendants' motion; they have therefore done nothing to attack the credibility of defendants' exhibits or to argue that, despite the gross sales figures listed on the tax returns, defendants meet the statutory threshold, *cf. Li*, 35 F. Supp. 3d at 306 (noting that plaintiffs cannot defeat summary judgment unless they "furnish[] 'concrete' and 'affirmative' evidence to support the conclusion that the restaurant's gross sales were more than $500,000 every year" (quoting *Anderson*, 477 U.S. at 256)). As such, "the record as a whole points in one direction," *Schoonejongen*, 143 F.3d at 130, and there is no dispute regarding the restaurant's gross sales.

To be sure, there are many reasons for the court to be cautious about relying too heavily on defendants' tax returns: they are unsigned, they are not accompanied by an affidavit from the tax preparer attesting to their accuracy, and defendants have not submitted returns for the years 2016 or 2017. But these flaws, on their own, are not fatal to defendants' motion. *Cf. Liu*, 2018 WL 1037480, at *5 (granting defendants' motion for summary judgment—even where defendant submitted unsigned tax returns—because there was a "dearth of evidence contradicting the

accuracy and authenticity of the tax returns submitted by Defendants"). Here, plaintiffs have not only failed to present sufficient evidence to challenge the reliability of defendants' tax returns—they have submitted *no* evidence that would raise a genuine dispute of material fact regarding the restaurant's gross sales. Plaintiffs' silence on this issue sets this case apart from the many cases in the Second Circuit where a plaintiff's evidence contradicting a defendants' inconclusive tax returns was deemed sufficient to defeat a motion for summary judgment. *See, e.g.*, *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 348 (E.D.N.Y. 2014) (denying summary judgment where defendants' tax returns were unsigned *and* "Plaintiffs' sworn statements contradict the tax returns"); *Monterossa*, 2012 WL 3890212, at *3–4 (denying summary judgment where defendants' own gross sales evidence was inconsistent *and* plaintiffs offered sworn testimony attesting that the restaurant "grossed between $2,000 and $5,000 a day"). Furthermore, though the tax returns are unsigned and are not accompanied by the tax preparer's affidavit, defendants provide the name of the tax preparer along with an unsigned letter prepared by him, and Mr. Ma's affidavit affirms the accuracy of the underlying gross sales figures. *Cf. Rocha*, 44 F. Supp. 3d at 348 ("The absence of a signature on the tax returns, combined with the absence of an affidavit . . . from the owner of the business verifying the authenticity of the returns caution against presuming their authenticity.").

Moreover, plaintiffs' failure to respond to the court's pretrial scheduling orders resulted in a waiver of many of the issues that plaintiffs previously intended to raise at trial—including plaintiffs' allegation that defendants satisfy the enterprise coverage requirements under the FLSA. First, plaintiffs disobeyed the court's November 30, 2018 and December 11, 2018 orders by failing to submit a brief demonstrating their evidentiary basis for arguing at trial that defendants meet the statutory threshold. Then, on December 20, 2018, plaintiffs failed to respond to the court's

December 18, 2018 order to show cause as to why sanctions should not issue for plaintiffs' repeated failure to comply with the court's orders. Under Fed. R. Civ. P. 16(f)(1)(C), the court may issue sanctions if a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 37(b)(2)(A)(ii)–(vii), which is incorporated explicitly within Rule 16(f)(1), lays out several permissible sanctions that may follow from a party's disobedience. These include an order by the court that the disobedient party is prohibited "from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). In this case, plaintiffs have failed to respond to defendants' motion for summary judgment *and* they have failed to respond to the court's orders; given plaintiffs' conduct, the court is justified in concluding that plaintiffs are forbidden from introducing any further evidence regarding the defendants' gross sales or receipts.[6] Thus, to the extent that there are deficiencies in defendants' exhibits submitted along with the summary judgment motion, plaintiff is precluded from arguing that defendants meet the statutory threshold; as a result, there are no triable issues regarding defendants' enterprise coverage.

In conclusion, while defendants' evidence is not "dispositive proof that [defendants'] gross sales were *less than* $500,000 annually, nothing in the records suggests that [the restaurant] actually earned *more than* $500,000." *Liu*, 2018 WL 1037480, at *5. Because plaintiffs have not met their burden of demonstrating that there is a genuine dispute of material fact on this issue, summary judgment is appropriate, and I dismiss plaintiffs' federal claims.

---

[6] The issuance of sanctions in this case complies with the requirements of due process. The court gave plaintiffs notice of its intent to impose sanctions and an opportunity to be heard before any sanctions were imposed. *See Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997). Moreover, the court provided the plaintiffs with notice of the specific conduct alleged to be sanctionable and the "authority under which sanctions are being considered." *Id.* at 97; *see* Order to Show Cause, Dec. 18, 2018.

### B. State-Law Claims

Because I have "dismissed all claims over which [the court] has original jurisdiction," I "decline to exercise supplemental jurisdiction" over plaintiffs' remaining state-law claims under the NYLL. 28 U.S.C. § 1367(c); *see also Li*, 35 F. Supp. 3d at 309–10 (dismissing plaintiff's state-law claims after granting summary judgment to defendants on plaintiff's FLSA claims).

### CONCLUSION

For the foregoing reasons, defendants' summary judgment motion is granted. As such, plaintiffs' FLSA claims are dismissed with prejudice, and their state-law claims are dismissed without prejudice to renewal in state court. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

Date:  December 27, 2018             \_\_\_\_\_/s/_____
       Brooklyn, New York                                                    Allyne R. Ross